ALICE M. HEMENWAY, executrix, &c., appellant,

*v.*

LANDON P. SMITH et al., respondents.

[Decided May 20th, 1929.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Berry, who filed the following opinion:

"This bill is filed to rescind a sale by Alice M. Hemenway and John F. Hemenway of one-half of the capital stock of Smith & Hemenway, Incorporated, a New York corporation, to the defendants for the sum of $125,000 on the ground of duress.

"Mr. Hemenway and Mr. Smith had been associated in business together in two enterprises since 1898, when the combined capital of the two enterprises was between ten and eleven thousand dollars. The contract of sale, rescission of which is here sought, was dated October 29th, 1925. According to the testimony of the defendant Landon P. Smith, he and Mr. Hemenway had been at loggerheads over their business and had engaged in frequent quarrels during the greater portion of the period during which they were in business together, but in spite of that fact their business had grown from the modest beginning in 1898 to the net worth, exclusive of good will, trade name, &c., of $409,711.77 on June 30th, 1925, and this without the addition of any outside capital. This book value represented accumulations of profits during the period indicated, and during that period both Mr. Smith and Mr. Hemenway had drawn substantial salaries and dividends from the company. The stock of the company was equally divided between Hemenway and his wife and Smith and his wife. On June 9th, 1924, a stockholders' agreement was entered into under the provisions of which the Smiths and Hemenways could sell their interest in the business only to each other and in the event of death of one, the survivor agreed to buy the share of the deceased

at the book value as shown by the company's statement. That agreement was never rescinded or canceled unless it was superseded by the agreement which is the subject of this suit. By its terms the agreement of June 9th, 1924, was to be construed in all respects according to the laws of the State of New York.

"This corporation was for all practical purposes a partnership in corporation form, the active members of the corporation being the defendant Landon P. Smith, who was president and director and who had charge of the manufacturing and plant operations at Irvington, New Jersey, and Mr. Hemenway, treasurer and director, who maintained the New York office and had charge of the finances of the company. Mrs. Smith and Mrs. Hemenway were merely figureheads. In the spring of 1925 there was considerable dissension and disagreement between Smith and Hemenway, Smith alleging that this was due to Hemenway's inattention to business and failure to supply financial support for the proper conduct of the business. Mr. Hemenway is not here to refute these charges. He died on January 2d, 1926, a few days after the consummation of the agreement the subject of this suit. He was at that time about seventy years old, the defendant Landon P. Smith some ten years his junior. In the spring of 1925 matters had reached such a point that Smith refused to continue the business any longer in association with Hemenway and at a conference between the two it was suggested by Smith that one or the other had to get out and Smith offered to sell. Hemenway tried to pacify him and induce him to continue in the business. Smith was adamant and finally refused either to continue in the business with Hemenway or to sell, but insisted upon buying Hemenway's share and threatened that if Hemenway refused to sell proceedings for dissolution of the company would be instituted. Such proceedings were actually instituted in the New York courts sometime during the summer of 1925, and, as a result of these proceedings, after Smith's refusal to submit a buy or sell proposition, Mr. Hemenway, through his counsel, under date of October 12th, submitted an offer to buy or sell for the sum of $125,000. The offer to sell was

immediately accepted by Mr. Smith by telephone and later confirmed in writing, and a formal agreement embodying the terms of the offer executed under date of October 29th, 1925, and finally performed on December 9th, 1925. Without going into the evidence in detail, I may say that Smith's charge of inattention to business by Hemenway is not supported by any substantial evidence and I find as a fact that there was no dereliction of duty on the part of Hemenway. Whether or not there was any valid ground for dissolution of the company, and whether the allegations of the petition for dissolution were false or true, it is unnecessary for me to decide. Shortly after the consummation of the agreement of October 29th, 1925, the defendant sold a portion of the Smith and Hemenway company business to the Crescent Tool Company for $270,000 in cash. He retained the most profitable portion of the business and assets valued at approximately $300,000, included in which was real estate valued at $150,000, and which the Crescent Tool Company leased from Smith for an annual rent of $15,000. It is alleged in the bill that negotiations for the sale of a portion of the Smith & Hemenway business to the Crescent Tool Company had been opened by Smith in the spring of 1925, about the time he refused to sell his interest in the concern to Hemenway, and that this fact accounts for his attitude. While the circumstances surounding this transaction are suspicious, I do not feel warranted in finding as a fact that actual negotiations touching this sale had been opened prior to October 12th, 1925. It is an admitted fact, however, that such negotiations were begun shortly thereafter and that they were practically complete before the sale from Hemenway to Smith was consummated. The memorandum of the proposed written agreement was dated December 18th, 1925; the formal agreement January 19th, 1926, and this provided for settlement as of December 21st, 1925. The theory underlying this action is that Smith, seeing an opportunity to make a profitable deal with the Crescent Tool Company, had determined to force Hemenway out of the picture and seized upon the dissolution proceedings as a means to that end, and that by threatening destruction of

the business through these proceedings, which it is claimed were unfounded, the Hemenways were forced to sell out at an inadequate price on pain of greater loss on dissolution. As already indicated, Mr. Hemenway died very shortly after the sale was consummated. Mrs. Hemenway survived him but died before final hearing in this cause. After Mr. Hemenway's death and on January 19th, 1925, Mrs. Hemenway executed in her own behalf and as executrix of her husband's estate, a release of the Smiths which was provided for in the contract of sale. This bill seeks a rescission of this sale and an account of the profits on the tool company purchase and an accounting of the business up to the date of the decree. I have no difficulty in arriving at the conclusion that this sale was not the result of duress in view of the letter of October 12th from Hemenway's lawyer to Mr. Smith's attorney, in which the buy or sell proposition was submitted, coupled with the fact that subsequently and before the performance of the agreement which was entered into on October 29th, Hemenway had ample time for reflection and could, if he had been so minded, have rescinded the sale and stopped the dissolution proceedings. His attitude, however, as gleaned from the various exhibits introduced in evidence, was one of affirmation of the transaction continually up until the final settlement, and there is no evidence that he ever expressed dissatisfaction with the transaction even after its consummation. On the contrary, his letter to Mr. Cohn, his attorney, written from Atlantic City after the execution of the contract, but before performance, indicates a desire and an intention to hold Mr. Smith to the terms of the agreement. In reaching this conclusion I have not lost sight of the fact that the dissolution proceedings were not discontinued until after the contract of October 29th, 1925, was executed, but I do not consider those proceedings to have been the compelling influence behind this transaction to the extent of rendering the contract involuntary on the part of the Hemenways. It is a significant fact, and, to my mind, somewhat controlling here, that the contract of sale, rescission of which is now sought, was the direct result of a buy or sell offer made by Hemenway him-

self. It is, I think, a reasonable presumption that Hemenway would have bought the Smith's interest on the same price basis of which complaint is now made had Smith accepted Hemenway's offer to buy rather than that to sell, and would no doubt have resisted any attempt of Smith to thereafter deprive him of the advantages of that transaction, which is exactly and only what the Smiths are doing here. After all, the important question to be determined here is whether or not the minds of the Hemenways were so subjected to the will and control of the Smiths, however exercised, that the Hemenways were deprived of their free agency to the extent that their acts were really the acts of the Smiths.

" 'The question in each case is, Was the person so acted upon by threats of the person claiming the benefit of the contract, as to be bereft of the quality of mind essential to the making of a contract, and was the contract thereby obtained?' *9 R. C. L. tit. 'Duress' 716* § 7.

"In my judgment, that question should be answered in the negative here. Hemenway was not compelled to make the buy or sell offer. He could have resisted the attempt at dissolution had he been so minded, and perhaps successfully. That he chose to do the former, acting as a free agent, is no ground of complaint now, especially in view of his subsequent attitude after time for reflection.

"I will advise a decree dismissing the bill of complaint."

*Messrs. Guild, Lum & Tamblyn*, for the appellant.

*Messrs. Burnett, Murray & Trelease*, for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Berry.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, CASE, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 13.

*For reversal*—None.